State v. Byrne.

————◄●●●►————

THE STATE, Respondent, v. BYRNE, Appellant.

1. Where the circumstances of a homicide show *beyond all question* that it was committed by lying in wait, (it being assumed by the prosecution and by the accused that the only question for determination is, whether the accused committed the homicide,) it is not error to refrain from instructing the jury as to the law of murder in the first and second degrees.

*Appeal from Cape Girardeau Circuit Court.*

The following were the only instructions given to the jury: "The jury will acquit unless the evidence exclude from their minds all reasonable doubt as to the guilt of accused. The

conduct of the accused, before and after the death of Thomas J. Calhoun, may be taken into consideration in determining the guilt or innocence of the accused. The character of the accused for peace and humanity may also be taken into consideration, and such weight given thereto in repelling presumptions of guilt as the jury may think it entitled to from the evidence in this case."

*Frissell* and *Blennerhassett*, for appellant.

*H. A. Clover*, (circuit attorney,) for the State.

RYLAND, Judge, delivered the opinion of the court.

The defendant, William Byrne, was indicted at a special term of the Circuit Court of the county of Scott, held on the fourth Monday of June, in the year 1855, for the murder of Thomas J. Calhoun. On the same day that the indictment was returned into court by the grand jury, viz., on the 26th of June, 1855, the defendant, then in the custody of the sheriff of Scott county, appeared in court and filed his petition, verified by his oath, praying for a change of venue in this case. The venue was changed accordingly, and on his application, to the county of Cape Girardeau, and the defendant was ordered to be conveyed to said county and delivered to the custody of the jailor thereof. The transcript of the record of the proceedings was filed in the office of the clerk of the Circuit Court of Cape Girardeau county, on the 19th day of August, 1855. At the November term of said court the case was called for trial, the defendant was arraigned, and pleaded " not guilty" to the indictment. A trial was had, and the defendant was found guilty of murder in the first degree. He moved for a new trial, which was overruled, and exceptions taken. He moved an arrest of judgment, which was also overruled, and exception taken ; and thereupon judgment was rendered on the verdict, and sentence passed on the prisoner. He appealed to this court. The Circuit Court allowed the appeal, with stay of execution of the sentence, until the judgment of this court was had on the case.

The evidence was circumstantial.  It showed that Thomas J. Calhoun was killed on the 21st of May, 1855, in Scott county, while he was engaged in plowing in his own field.  He was shot by some person from a thicket of briers and brush inside of his field ; there was a forked poplar sapling in the thicket, and it seems from the tracks of a person around and at this sapling, and from the appearance of the briers and brushes being broken and pushed aside, that the murderer had concealed himself and laid in wait for his victim at this place, and from this place shot Calhoun in his back, as he was in all probability turning around his horse and plow.  There could be no doubt of the killing being murder in the first degree.  Calhoun was found a short distance from his plow ; he had gone towards the road near the fence, and had fallen four or five times, as appeared from the blood and impressions on the plowed ground. When found, he was dead, and had no weapons with him ; the gun was heard to fire, then a second report was heard.  Calhoun was heard to halloo after the gun was fired.  The testimony is lengthy and not necessary to be inserted in this opinion.  The only question was, who did the bloody deed ?  That it was murder in the first degree seemed never to have been doubted.  The testimony satisfied the jury that the prisoner was the guilty man, and we think they were justified in coming to that conclusion.

The counsel for the prisoner in this court has made four points, to which our attention has been specially directed, for the reversal of the judgment of the Circuit Court.  First, the Circuit Court of Cape Girardeau had no jurisdiction, because the record does not show that a special term in Scott county was legally held.  There is nothing real or of weight in this objection.  The circuit judges are required by law to hold special terms for trial of criminal cases, whenever they are informed by the jailors of persons being confined in jail two months before the regular term of the court ; when such special term shall be ordered, the judge shall cause notice thereof to be served on the attorney general or circuit attorney, and the

prisoner or prisoners to be tried ten days before the commencement of said term. The judge, in his discretion, may order a grand jury to be summoned, and the court, at such special term, shall possess all the jurisdiction and shall have all the powers of a circuit court in criminal proceedings at a regular term thereof. The indictment shows that it was in the Circuit Court of the county of Scott, at a special term thereof, held on the fourth Monday of June, in the year 1855. The indictment was preferred by a grand jury at that term. The court had the right to empannel a grand jury at such special term. Now this special term was, as appears by the record, held on the fourth Monday in June. By the general law, the next regular term would have commenced on the second Monday in September, so that there were more than two months between the special and the regular term. This special term may have been called to try this prisoner on this very charge of murder, or it may not. He was in the custody of the sheriff when the indictment was returned. The record shows there had been a court held before a justice of the peace, for the examination of the prisoner on this charge on the sixth of June, 1855. Now whether the special term of the Scott Circuit Court was held in consequence of the prisoner being confined in jail more than two months before the regular term of said court or not, the record shows in this case that there was a special term of said Circuit Court. It had all the powers of a circuit court in criminal proceedings, and all the jurisdiction of such courts in such proceedings. Now there can be no necessity for the notice of the jailor to to the judge, nor of the order of the judge being certified on this record. There was a special term; the indictment was found at such term; the prisoner is in custody at that term; he appears and makes his application for a change of venue; it is awarded to the Cape Girardeau Circuit Court; when called there and arraigned, he pleads to the. indictment. The whole proceedings are regularly and legally transacted, and the Cape Girardeau Circuit Court had jurisdiction of cause and person.

There is nothing in this point, and this is the strongest one the counsel has mentioned.

*Second point.*—The court did not instruct the jury as to the difference between murder in the first and second degree; no such instruction was asked. It was admitted by defendant, as the record shows, that Calhoun was killed by a rifle shot, in Scott county. The murder was understood by every man old enough to be on a jury, or old enough to shoot a rifle, to have been done with premeditation, with deliberation, with lying in wait, with malicious purpose and intent. A darker, blacker, more heinous murder is seldom recorded in the annals of crime. There was no need to instruct the jury that such a murder was in the first degree and not in the second. They knew it, and the defendant's counsel knew it. The only question of interest to them and their client was, who was the actor.

The third and fourth points relate to the rulings of the court in regard to the instructions refused. We have looked carefully into those instructions, and conclude they were properly and regularly refused. They were either abstract propositions of law, having nothing to do with the case, or they were improper, because they were designed to interfere with the jury in their province as to how they ought to regard evidence, or how they should weigh it. We see nothing in the points relied on by the counsel for the prisoner. We have not confined our investigation to those points only, but have looked through the whole record, and found nothing calling on this court for correction. The judgment must therefore be affirmed; the other judges concurring. As the court below suspended execution of the sentence until the opinion of this court could be had, the case is therefore remanded to said court that it may fix the day of the execution of its sentence, and order it to be carried into effect.